Quentin M. Rhoades
**RHOADES & ERICKSON PLLC**
430 Ryman Street
Missoula, Montana 59802
Telephone: (406) 721-9700
courtdocs@montanalawyer.com
*Pro Hac Vice*

Bradley L. Booke #5-1676
P.O. Box 13160
Jackson, Wyoming 83002
Telephone: 702-241-1631
brad.booke@lawbooke.com
*Pro Querente*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JENNIFER M. ACCURSO and MATHEW M. ACCURSO, husband and wife, GEORGE BOLCATO, an individual, TOM DREAN and KITTY DREAN, husband and wife, BRANDON FAIRBANKS, an individual, TROY JERUP, an individual, DAVID JOHNSON, an individual, RICHARD LEBRECQUE and VALERIE LEBRECQUE, husband and wife, JIM MCCOLLUM, an individual, ROICE MCCOLLUM, an individual, WILLIAM MEHLE and PHYLLIS MEHLE, husband and wife, GREGORY V. MEHLE and ANNE MEHLE, husband and wife, RANDALL OLSON, an individual, PAUL ORNDORFF, an individual, GLENN PAULSON and LINDA COOPER, husband and wife, CHARLES PFEIFFER, an individual, ROBERT PFEIFFER, an individual, FISHERMAN YP, LLC, a limited | Case No.: <br><br> ***COMPLAINT*** <br> ***AND*** <br> ***REQUEST FOR*** <br> ***ADVISORY JURY TRIAL*** |

| | |
|---|---|
| liability company, OWEN POPINCHALK, an individual, TERESA SCHRADER, an individual, SAM SUMRALL and JANICE SUMRALL, husband and wife, RONALD WARREN and ALICE WARREN, husband and wife, GARY ZUNINO and VALERIE ZUNINO, husband and wife, and THE G & V ZUNINO FAMILY 1996 FAMILY TRUST<br><br>                    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                    Defendant. | |

Jennifer M. Accurso and Mathew M. Accurso, husband and wife, George Bolcato, an individual, Tom Drean and Kitty Drean, husband and wife, Brandon Fairbanks, an individual, Troy Jerup, an individual, David Johnson, an individual, Richard LeBrecque and Valerie LeBrecque, husband and wife, Jim McCollum, an individual, Roice McCollum, an individual, William Mehle and Phyllis Mehle, husband and wife, Gregory V. Mehle and Anne Mehle, husband and wife, Randall Olson, an individual, Paul Orndorff, an individual, Glenn Paulson and Linda Cooper, husband and wife, Charles Pfeiffer, an individual, Robert Pfeiffer, an

2

COMPLAINT AND REQUEST FOR ADVISORY JURY TRIAL

individual, Fisherman YP, LLC, a limited liability company, Owen Popinchalk, an individual, Teresa Schrader, an individual, Sam Sumrall and Janice Sumrall, husband and wife, Ronald Warren and Alice Warren, husband and wife, Gary Zunino and Valerie Zunino, husband and wife, and The G & V Zumino Family 1996 Family Trust state for their Complaint as follows:

## INTRODUCTION

1.   This is a civil action brought under 28 U.S.C. § 2671, et seq., the Federal Tort Claims Act (FTCA), to obtain a money judgment in compensation for negligence claims arising from Defendant United States of America's response to the Roosevelt Fire on the Bridger-Teton National Forest in Lincoln and Sublette Counties, State of Wyoming in mid-September of 2018.  The FTCA makes the United States liable (with certain exceptions which are not relevant here) for the negligence of its employees in responding to the Roosevelt Fire. *Rayonier Inc. v. United States*, 352 U.S. 315 (1957).

2.   In this case, Defendant United States of America, acting through its agency, the United States Department of Agriculture Forest Service (Forest Service) chose not to suppress the Roosevelt Fire.  Plaintffs' allege that the Forest Service was negligent in its initial response to the fire and in its overall

management of the fire. It negligence was the proximate cause of substantial personal injury, property damage, and special and general damages to Plaintiffs.

3. The use of unplanned fire to achieve natural resource benefits, which consists of major federal action, is not authorized by federal law because in deciding to use unplanned fire as a resource management tool, the Forest Service did not adhere to the National Environmental Policy Act, did not consult with the U.S. Fish and Wildlife Service under the Endangered Species Act and did not harmonize the action with the applicable Forest Plan as the National Forest Management Act requires.

## PARTIES

4. Plaintiffs Jennifer M. Accurso and Mathew M. Accurso, husband and wife, own real property damaged by the Roosevelt Fire.

5. Plaintiff George Bolcato, an individual, owns real property damaged by the Roosevelt Fire.

6. Plaintiffs Tom Drean and Kitty Drean, husband and wife, own real property damaged by the Roosevelt Fire.

7. Plaintiff Brandon Fairbanks, an individual, owns real property damaged by the Roosevelt Fire.

8. Plaintiff Troy Jerup, an individual, owns real property damaged by the Roosevelt Fire.

9. Plaintiff David Johnson, an individual, owns real property damaged by the Roosevelt Fire.

10. Plaintiffs Richard LeBrecque and Valerie LeBrecque, husband and wife, own real property damaged by the Roosevelt Fire.

11. Plaintiffs Jim McCollum, an individual, and Roice McCollum, an individual, own real property damaged by the Roosevelt Fire.

12. Plaintiffs William Mehle and Phyllis Mehle, husband and wife, own real property damaged by the Roosevelt Fire.

13. Plaintiffs Gregory V. Mehle and Anne Mehle, husband and wife, own real property damaged by the Roosevelt Fire.

14. Plaintiff Randall Olson, an individual, owns real property damaged by the Roosevelt Fire.

15. Plaintiff Paul Orndorff, an individual, owns real property damaged by the Roosevelt Fire.

16. Plaintiffs Glenn Paulson and Linda Cooper, husband and wife, own real property damaged by the Roosevelt Fire.

17. Plaintiff Charles Pfeiffer, an individual, owns real property damaged by the Roosevelt Fire.

18. Plaintiff Robert Pfeiffer, an individual, owns real property damaged by the Roosevelt Fire.

19. Plaintiff Fisherman YP, LLC, a limited liability company, owns real property damaged by the Roosevelt Fire.

20. Plaintiff Owen Popinchalk, an individual, owns real property damaged by the Roosevelt Fire.

21. Plaintiff Teresa Schrader, an individual, owns real property damaged by the Roosevelt Fire.

22. Plaintiffs Sam Sumrall and Janice Sumrall, husband and wife, own real property damaged by the Roosevelt Fire.

23. Plaintiffs Ronald Warren and Alice Warren, husband and wife, own real property damaged by the Roosevelt Fire.

24. Plaintiffs Gary Zunino and Valerie Zunino, husband and wife, own real property damaged by the Roosevelt Fire.

25. Plaintiffs The G & V Zumino Family 1996 Family Trust, own real property damaged by the Roosevelt Fire.

26. Plaintiffs are referred to collectively as "Plaintiffs."

27. Defendant United States of America acted, at all times relevant to the claims stated herein, through its agency, the United States Department of Agriculture Forest Service (Defendant is referred to hereinafter as "the Forest Service").

## JURISDICTION AND VENUE

28. Plaintiffs have exhausted their administrative remedies, per 28 U.S.C. § 2675(a), as Plaintiffs timely submitted their claims to the relevant federal agency and the agency failed to act on Plaintiffs' administrative claims within six months of presentment. Plaintiffs' claims are, therefore, ripe and justifiable.

29. The Court has subject matter jurisdiction over this FTCA Act civil action pursuant to 28 U.S.C.A. § 1346(b)(1) because the action is on claims against the Forest Service, for money damages for injury or loss of property and personal injury caused by the negligent or wrongful act or omission of employees of the Forest Service while acting within the scope of their office or employment, under circumstances where the Forest Service, if a private person, would be liable to Plaintiffs in accordance with the law of the State of Wyoming, the place where the act or omission occurred.

30. The discretionary function exception to the FTCA does not apply because the conduct at issue violated a federal statute, regulation, or policy and the

Forest Service has no rightful option but to adhere to the directive.

31. In addition, to the extent the Forest Service retained any discretion in its decision making, in this case, that discretion was not made under or subject to policy analysis. Because it does not include policy analysis, the failure to warn, in this instance, is not subject to the discretionary function exception to the FTCA.

32. Venue in this Court is proper because all the activities that give rise to the causes of action alleged, and damages occurred in the State of Wyoming.

## THE ROOSEVELT FIRE

33. The Roosevelt Fire was an unplanned, human-caused wildfire in Bridger-Teton National Forest in the state of Wyoming. The ignition point was near the head of the Hoback River in the Wyoming Range, some 30 miles south of Jackson, Wyoming. The fire was first reported on Saturday, September 15, 2018.

34. National Oceanic and Atmospheric Administration (NOAA) weather archives for September 15, 2018, show that no lightning ground strikes occurred in the area after September 3, 2018—12 days before the first report of the Roosevelt Fire. When the fire started, Forest Service officials had real-time access to this data via the world wide web and knew immediately that the cause and origin of the Roosevelt Fire was not natural.

8

COMPLAINT AND REQUEST FOR ADVISORY JURY TRIAL

35. The next day, on Sunday, September 16, 2018, the Forest Service published its initial Wildfire Decision Support System (WFDSS) documentation for the Roosevelt Fire. It listed its "course of action" as follows:

> Monitor and inform the public:
> Monitor the fire by patrolling, hiking, air patrol, and IR flights
> Monitor fire activity as it relates to the established MAP's [sic]

36. In the "rationale," written to justify the course of action, the WFDSS states: "My Decision is to manage the Roosevelt Fire with an initial emphasis on monitoring fire progression and visitor safety. The fire has a high probability of remaining manageable with a smaller organization due to few values at risk. . . . The Forest service [sic] has been the primary decision makers in the decision process. . . . Monitoring fire progression and providing for visitor safety is the emphasis. . . ."

37. At the time of the decision, as the WFDSS documents, Bridger-Teton National Forest was under a forecast for "Red Flag" conditions, including high winds and low relative humidity the day the fire was discovered. Warm, dry conditions were expected to continue through the week.

38. On the same day, September 16, 2018, the Forest Service stated in a news release that it urged visitors and hunters to stay out of the area near the fire. It further stated, with emphasis added:

> Wildfires burning under the right weather conditions and in appropriate [*sic*] locations can break-up forest fuels and create landscapes that are more resistant to large, high-severity fires. A combination of tools, including the ***use of restoration wildfire***, can help managers reduce the risk of future mega-fires in the Bridger-Teton National Forest. Naturally-ignited fires managed for restoration purposes can improve forest health and resilience and resistance to high-severity wildfires.

The Forest Service also acknowledged in the news release: "Fire danger on the Forest is High." Elsewhere, a duly authorized Forest Service public information officer told local news media: "The [Roosevelt] fire is being ***used*** on the landscape to reintroduce fire in its natural role." (Emphasis added.)

39. Despite the use being made of the fire, in the WFDSS documentation, the section called "Benefits" was left bank. No explanation has been given for the discrepancy between the Forest Service's public statements and its failure to discuss any use of the fire to reintroduce fire in its natural role in the WFDSS documentation. Upon information and belief, the public information officer received her information from the personnel responsible for managing the fire, and she relayed that information to the news media pursuant to her official duties. Notably, the public information officer never subsequently issued a public retraction of her statements or repudiated the accuracy of the news accounts of her statements.

40. On September 17, 2018, the Forest Service used the Roosevelt Fire to restore fire to the landscape several miles to the east, triggering evacuations in residential areas northwest of Pinedale, Wyoming, in its path.

41. On September 18, 2018, the Forest Service used the Roosevelt Fire to restore and treat landscapes in the direction of Bondurant, Wyoming. The Forest Service's activity caused local authorities to order the evacuation of 230 homes. The evacuation order forced Plaintiffs off their real property in the Hoback Ranches.

42. By the morning of September 19, 2018, the Forest Service had used Roosevelt Fire to restore fire to the landscape of over 25,000 total acres. It used the fire as a resource management tool despite a strict national policy against using human-caused fires for resource benefits.

43. The next day, the Forest Service's restoration fire burned its first home in Hoback Subdivision.

44. On September 21-23, 2018, the Forest Service's use of the Roosevelt Fire as a restoration fire caused damage to real and personal property owned by Plaintiffs.

## COUNT I
## (Negligence)

45. Plaintiffs restate all of the foregoing allegations the same as if set forth herein in full.

46. The Forest Service had a duty to exercise the degree of care which should reasonably be expected of the ordinarily careful person under the same or similar circumstances.

47. The Forest Service was negligent in that it breached its duty of care by electing to use the Roosevelt Fire for resource management purposes during a time of high fire danger.

48. The Forest Service had a duty to exercise the degree of care which should reasonably be expected of the ordinarily careful person under the same or similar circumstances in communicating with local landowners about its plan to use the Roosevelt Fire and the risk such use would create.

49. The Forest Service was negligent in that it breached its duty of care by failing to communicate with Plaintiffs about its plan to use the Roosevelt Fire and the risk such use would create.

50. The Forest Service's breach of its duty of care caused Plaintiffs to suffer damage to their real and personal property. The breach played a substantial part in bringing about damage to their real and personal property.

51. The personal property damage Plaintiffs suffered as a result of the Forest Service's breach of due care include the fair market value of the personal property destroyed and the cost to repair the personal property damaged, and in the loss of use of such property, in an amount to be determined at trial.

52. The real property damage Plaintiffs suffered as a result of the Forest Service's breach of due care is of permanent character and cannot be repaired except at great expense, and therefore the compensation due consists of the difference between the value of the real property before and after damage, as well as for the loss of the use of such property, and emotional distress in an amount to be determined at trial.

53. Plaintiffs are entitled to a money judgment against the Forest Service for damage to personal property, damage to real property, and emotional distress in an amount to be determined at trial.

## COUNT II
### (Trespass)

54. Plaintiffs restate all the foregoing allegations the same as if set forth herein in full.

13

COMPLAINT AND REQUEST FOR ADVISORY JURY TRIAL

55. Plaintiffs had an exclusive possessory interest in the real property described herein and the personal property stored on their real property.

56. The Forest Service's Roosevelt Fire invaded the interests of Plaintiffs in their real and personal property, described herein, and its physical condition, which invasion constitutes trespass to real property and chattels.

57. The Forest Service's trespass caused Plaintiffs to suffer damage to their real and personal property. The breach played a substantial part in bringing about damage to their real and personal property.

58. The personal property damage Plaintiffs suffered as a result of the Forest Service's trespass include the fair market value of the personal property destroyed and the cost to repair the personal property damaged, and in the loss of use of such property, in an amount to be determined at trial.

59. The real property damage Plaintiffs suffered as a result of the Forest Service's trespass is of permanent character and cannot be repaired except at great expense, and therefore the compensation due consists of the difference between the value of the real property before and after damage, as well as for the loss of the use of such property, and emotional distress in an amount to be determined at trial.

60. Plaintiffs are entitled to a money judgment against the Forest Service for personal damage to personal property, damage to real property, and emotional distress in an amount to be determined at trial.

## REQUEST FOR RELIEF

Accordingly, Plaintiffs respectfully request the Court enter its order granting a money judgment for special and general damages against Defendant in such amount as Plaintiffs, and each of them, shall prove at the trial of this action:

1. To compensate Plaintiffs for the torts stated herein;

2. For attorney fees and costs as allowed by law; and

3. For such other and further relief as the Court may find appropriate in the circumstances.

DATED this 12th day of September 2023.

>Respectfully Submitted,
>RHOADES & ERICKSON PLLC
>
>By   /s/ *Quentin M. Rhoades*
>    Quentin M. Rhoades
>    *Pro Querente*
>
>By   /s/  Bradley L. Booke
>    Bradley L. Booke

## REQUEST FOR ADVISORY JURY

Acknowledging that they are not entitled to a jury trial under the claims alleged herein, Plaintiffs respectfully request the Court to impanel an advisory jury in the exercise of its discretion.

DATED this 12th day of September 2023.

        Respectfully Submitted,
        RHOADES & ERICKSON PLLC

        By  /s/ *Quentin M. Rhoades*
            Quentin M. Rhoades
            *Pro Querente*